CRANCH, Chief Judge, stated his opinion to be that the case was within the statute of frauds and perjuries. The plaintiff's memorandum in his book is not signed by any one, and the defendant's assent to it is only proved by oral testimony; so that, without the letters, the case is clearly within the statute. The letters do not contain the whole contract, nor do they refer to the written memorandum in the plaintiff's book; with which the letters cannot be connected without parol testimony. 2 Kent, Comm. 511.

THE COURT further instructed the jury, at the prayer of the plaintiff's counsel, "that if they believed, from the evidence, that the defendant, residing and carrying on the business of a miller, at Williamsport, in the state of Maryland, contracted, on the 30th of March, 1835, to sell to the plaintiff one thousand barrels of flour, at $4.75 per barrel, and to deliver the same at Georgetown, on the 20th and 30th April next thereafter; and that afterwards, at the request of the defendant, and in consequence of a breach or breaches in the canal, the plaintiff agreed to extend the time for the delivery of the said flour, to the 5th and 15th day of May next thereafter, and that the defendant neglected and refused to deliver the said flour at the said last-mentioned times, then the plaintiff is entitled to recover in this action, although the jury should believe that the navigation of the said canal was much obstructed during the spring of the year 1835, and the defendant was put to inconvenience and difficulty in executing his said contract by reason thereof."

CRANCH, Chief Judge, observed that, as the court had overruled his opinion that the evidence was not sufficient to take the case out of the statute of frauds, he concurred in the present instruction.

The defendant's counsel, Mr. R. J. Brent, then prayed the court to instruct the jury, "that if they believe, from the evidence, that the whole of the one thousand barrels of flour, or any part thereof, was (Qu.? not) on hand at the time of entering into the alleged contract, then the entire contract is void, and the plaintiff is not entitled to recover." Which instruction THE COURT refused to give. Whereupon the defendant's counsel further prayed the court to instruct the jury, "that if they believe that Davidson and Dodge were parties in the original, or any substituted, contract, then the plaintiff is not entitled to recover." Which instruction THE COURT also refused to give.

The defendant's counsel then moved the court to instruct the jury, that there is no evidence of a contract to deliver five hundred barrels of flour on the 5th, and five hundred on the 15th of May, as charged in the declaration. Which instruction THE COURT (THRUSTON, Circuit Judge, contra) also refused to give. CRANCH, Chief Judge, concurred in this refusal; his opinion in respect to the statute of frauds having been overruled by THE COURT, as aforesaid.

To these refusals of the court to instruct the jury, as prayed by the defendant's counsel, and to the instructions given at the prayer of the plaintiff's counsel, the defendant took a bill of exceptions. The jury found a verdict, in favor of the plaintiff, $681.25. The defendant took a bill of exceptions, and, it is understood, applied to one of the justices of the supreme court for a writ of error. (which he could not have, as a matter of right, because the verdict was for less that $1,000,) but the justice refused to award it.

<hr>

DODGE (WOOLSEY v.). See Case No. 18,032.

DODGE & S. MANUF'G CO. (KIRBY v.). See Case No. 7,838.

DODGE & S. MANUF'G CO. (MARSH v.). See Case No. 9,115.

DODGE COUNTY (CHANDLER v.). See Case No. 2,592.

DODGE HEALY. The (CLARKE v.). See Case No. 2,849.

<hr>

## Case No. 3,957.

### In re DOE.

[2 N. B. R. 308 (Quarto, 100);[1] 1 Chi. Leg. News, 123.]

District Court, S. D. New York. Dec. 22, 1868.

BANKRUPTCY—ELECTION OF ASSIGNEE—SOLICITATION OF VOTES BY STRANGER.

The court will not sanction the practice of soliciting the votes of creditors by one seeking thereby to be chosen assignee, especially when such person is a stranger to the creditors, and makes it a regular business to seek out creditors and persuade them to prove their debts and vote for him as assignee.

[Cited in Re Mallory, Case No. 8,990; Re Wetmore, Id. 17,466.]

[In bankruptcy. In the matter of John Doe.]

BLATCHFORD, District Judge. In this case the register, in transmitting to the court the result of the first meeting of creditors, certifies to the court that at such meeting one creditor who had proved his debt appeared; that only one debt was proved; that the register enquired of such creditor if he desired to elect an assignee; that such creditor replied that he would elect Mr. ——, who was present; that as Mr. —— had been elected in six out of the last ten cases before the register, the register thought it right to make enquiries of the creditor concerning the choice, and elicited from him the statement that Mr. —— was a stranger to him, and

<hr>

[1] [Reprinted from 2 N. B. R. 308 (Quarto, 100), by permission.]

called at his place of business on the day preceding, with one of the notices to creditors, which was the first he had heard of the meeting, and called his attention to the notice, and solicited of him that he would prove his debt and elect Mr. —— as the assignee of the bankrupt, and, after consultation, it was agreed that he should attend the meeting of creditors, and swear to his claim and vote for Mr. —— as assignee; and that this statement was made in the presence of Mr. ——, who remarked that if he had not so called upon the creditor, the creditor would never have known of the meeting. The register remarks that he saw nothing in the conduct of Mr. R—— in any way disingenuous, but that, on the other hand, Mr. R—— was understood by the register to claim that it was not improper thus to secure himself to be elected. The register states that he certifies the case to the court, that it may be fully advised of the facts of the case in passing upon the question of the approval or disapproval of the assignee so elected, only suggesting the enquiry whether it would be a wholesome proceeding if adopted and approved by this court.

In addition to the facts stated in the certificate above-mentioned, I have been addressed by Mr. —— himself, who states that he proposes to make a regular business of seeking out creditors of bankrupts, and soliciting them to prove their debts and vote for him as assignee, with a view to such pecuniary emolument as may legitimately belong to the position. He is very frank on the subject, and states that he had no idea there was anything improper in what he had done, or proposed doing, and if the court thought there was, he would at once desist. I have before me now, unapproved as yet, the election of the same Mr. —— in another case, at an earlier date, before the same register, as assignee. I have also before me, unapproved as yet, his election in three other cases, before three other and different registers, as assignee. So far as appears from these cases his election was made in each of them by a single creditor.

To knowingly sanction election of an assignee made under circumstances such as those above stated, would be to open the door to abuses whose character can be well conjectured. A free election proceeding from the real choice of the creditors is one thing. An election persuaded by the importunity of the proposed assignee exercised upon indifferent creditors, is another thing. The elections are disapproved in all of the cases above-mentioned.

———

DOE ex dem. STURGESS v. BANK OF CLEVELAND. See Case No. 13,571.

DOE ex dem. LEWIS v. BARKSDALE. See Case No. 8,317.

DOE (HYDE v.). See Case No. 6,969.

## Case No. 3,958.

DOE v. JOHNSTON et al.

[2 McLean, 323.][1]

Circuit Court, D. Ohio.[2] Dec. Term, 1840.

EJECTMENT—STAY OF EXECUTION PENDING EQUITY SUIT IN STATE COURT—INJUNCTION—SERVICE OF SUBPOENA—LANDLORD AND TENANT—NOTICE TO QUIT.

1. This court will not stay proceedings on a judgment in ejectment, until the equity between the parties, of which they have jurisdiction, shall be investigated in a state court. But such proceedings will be stayed, where this court have not jurisdiction of the equity.

2. It is sufficient service of the subpoena, on an injunction bill, to serve it on the attorney of the plaintiff in the ejectment.

[Cited in Cortes Co. v. Thannhauser, 9 Fed. 228.]

3. A notice to quit, by the English rule, is necessary only where the relation of landlord and tenant subsists.

[Ejectment.]

Mr. Curtis, for lessor of plaintiff.
Mr. Goddard, for defendants.

OPINION OF THE COURT. Judgment having been entered, a motion was made by defendants' counsel, that further proceedings be suspended until a suit in equity, pending between the plaintiffs and defendants in the state court, which involves the title to the premises recovered in this suit, shall be decided. This motion was opposed by the plaintiff's counsel. It is the practice of this court to stay the writ of possession on a judgment in ejectment, where the defendant has an equitable right, which this court can not investigate for want of jurisdiction, until the same shall be heard and decided in the state court. And, if a conveyance of the legal title shall be decreed to the defendant, this court will give effect to the decree, by a final order to enjoin the writ of possession. In this mode of procedure, great inconvenience, expense and delay, arising from the limited jurisdiction of this court, are avoided. But, in this case, the court have jurisdiction of the matter in equity, as it arises between the parties to the present judgment. And, under such circumstances, to suspend the habere facias possessionem, until the defendants shall have spent their equity in a state court, would not only virtually supersede the jurisdiction of this court, but it would deprive the plaintiff of a right given to him by law, to be heard before this tribunal. Although the bill has been filed in the state court, yet the suit can not be said to be pending in that court, as the process has not been served, nor can notice be given, except by publication under the statute. But if the process had been served, this court, having jurisdiction of the equity, would not suspend the judgment on account of the proceedings in the state court.

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [District not given.]